SALVATORE MUZIO, Respondent, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

Second Department, December 4, 1936.

*Charles B. La Voe,* for the appellant.

*Albert R. Connolly,* for the respondent.

CARSWELL, J.   On September 13, 1932, defendant issued to plaintiff an accident policy.   By renewals it was in force on August 24, 1933.   On that day plaintiff, while riding in a taxicab, suffered injuries to the index and middle fingers of his right hand.   The treatment resulted in the fingers becoming rigid and incapable of bending.   He was thus totally disabled from pursuing his occupation as a barber.

The policy provided for an indemnity of twenty-five dollars a week for injuries received directly by violent and accidental means and for double indemnity if the injury be suffered as a passenger in a public conveyance.

The first paragraph of clause 2 read: " If such injuries shall not result as specified in Clause 1 [not here pertinent], but, directly and independently of all other causes, shall, within two weeks from the date of the accident, continuously and wholly disable and prevent the insured *from performing any and every kind of duty pertaining to the occupation in which he is engaged at the time of the accident,* the Company will pay the insured the weekly indemnity above specified for the period of such total disability, *not exceeding 52 weeks."*

Under the foregoing paragraph he was paid a double indemnity of fifty dollars a week for fifty-two weeks.   The disability continued and he demanded four weekly payments for the period between August 22, 1934, and September 19, 1934.   It was refused.   He brought suit therefor and recovered judgment, which has been affirmed.   The defendant appeals.

The provision under which recovery has been had is the second paragraph of clause 2, which reads: " If such disability shall continue for the period of 52 weeks and if the insured shall then and thereafter be continuously and wholly disabled by said injuries, independently of all other causes, *from engaging in any and every occupation or employment for wage or profit,* the Company will continue the payment of the weekly indemnity *as long as the insured shall be so disabled."*

What is the effect or correct interpretation of this second paragraph? The construction of language providing for benefits as a consequence of disability " from engaging in any and every occupation " usually arises with reference to life insurance policies having permanent disability benefits by way of waiver of premiums. These cases usually concern policies the language of which makes no distinction between benefits accruing for periods where one is disabled from following *the occupation then engaged in* and benefits for periods accruing by reason of one's being disabled from following *any other occupation*. (*Arico* v. *Prudential Insurance Co.*, 241 App. Div. 826; *Neill* v. *United Friends*, 149 N. Y. 430; *Hutchinson* v. *Supreme Tent, etc.*, 68 Hun, 355; *Heilbronn* v. *New York Life Ins. Co.*, 243 App. Div. 558.) In such cases it has not been imperative to enforce the sharp distinction between differentiating language such as is contained in the two clauses set out in the indemnity policy here involved, since such policies lack the differentiation we have here. This accounts for certain general observations therein which are not applicable to the engagements in the indemnity policy under consideration.

The language in both the first paragraph, under which plaintiff has received payments, and the second paragraph, under which he seeks further payments, discloses no ambiguity. The terms in a contract of insurance, like those in other contracts, are to be construed in their plain and ordinary sense unless the context indicates the contrary. (*Preston* v. *Ætna Insurance Co.*, 193 N. Y. 142, 144; *Drilling* v. *New York Life Ins. Co.*, 234 id. 234, 241.) They are not to be interpreted with an extreme literalism productive of absurd results by way of relieving or burdening the insurer. (*Heilbronn* v. *New York Life Ins. Co.*, 243 App. Div. 558.) If the second paragraph, which obligates the insurer to make payments where the insured is prevented from " engaging in any and every occupation," is construed as having no different meaning from the first paragraph, which obligates the insurer to make payments where the insured is disabled from " performing any * * * duty pertaining to the occupation in which he is engaged at the time of the accident," then the use of distinguishing language is rendered futile. When parties have used apt language to differentiate between two situations, their unambiguously expressed purpose and engagements may not be frustrated under the guise of interpretation. The language in the second paragraph, requiring the insurer to make payments in the event the insured is disabled from " engaging in any and every occupation," is to be reasonably construed. It is to be reasonably and practically applied to the determination of whether the insured is capable of engaging in

ordinary forms of employment apart from that in which he was engaged when the accident occurred. Only in this way can there be enforced the distinction in the two paragraphs between disability for the first fifty-two weeks' period, relating to the then present occupation of the insured, and the further period of disability of the insured " from engaging in any and every occupation."

The fact that plaintiff, because of two stiff fingers, is unable to continue as a barber does not mean that he is disabled from following a gainful employment. It is common knowledge that men with stiff fingers or disabled hands are engaged in many gainful employments. Plaintiff, therefore, is not entitled to the benefits of further payments under the second paragraph, which he invokes. He is not to be classed with one who has lost one or two arms or one or two legs.

This view makes it unnecessary to consider the suggestion that plaintiff could qualify himself to continue as a barber by having the two fingers amputated at the stiff joints and that he should be so relegated under the doctrine of *Palloni* v. *Brooklyn-Manhattan Transit Corporation* (215 App. Div. 634); *Finkelstein* v. *Metropolitan Life Ins. Co.* (152 Misc. 439).

This conclusion is in accord with authority. (*Williams* v. *John Hancock Mut. Life Ins. Co.*, 245 App. Div. 585; *Garms* v. *Travelers Insurance Co.*, 242 id. 230; affd., 266 N. Y. 446; *Finkelstein* v. *John Hancock Mut. Life Ins. Co.*, 247 App. Div. 74; *Steingart* v. *Metropolitan Life Ins. Co.*, 249 id. 114.)

The order of the Appellate Term affirming a judgment of the Municipal Court of the City of New York, Borough of Brooklyn, in favor of plaintiff, and the said judgment, should be reversed on the law and the complaint dismissed, with costs in all courts.

LAZANSKY, P. J., DAVIS, JOHNSTON and ADEL, JJ., concur.

Order of the Appellate Term affirming a judgment of the Municipal Court of the City of New York, Borough of Brooklyn, in favor of plaintiff, and said judgment, reversed on the law and the complaint dismissed, with costs in all courts.